and the Federal Retirement System. Okay, you can come on up to the podium. Let's just let everyone get settled for a minute. Okay, Mr. Preece, is it Preece? Price. Price, I'm sorry. First time it's been. All right. Good morning, Your Honor. My name is Philip W. Price, and I represent the New Orleans Firefighters Municipal Retirement Association and the firefighters of Louisiana, and probably as the Court is aware, the claim is a complex claim. It's been before this Court now on a number of occasions, but it primarily relates to Now, part of the case up here today relates to the claim that the firefighters have or that the Louisiana funds have against Grant Thornton. Grant Thornton was the auditor for a company we call Leveraged, with a D, and they were the company that provided the audit for Leveraged during 2007 and 2008, and really before then. We have filed a claim against them, and this case is a procedural quagmire, which this is just part of. Originally in 2015, the case was up here on the question of whether it would be remanded to state court, which resulted in delay in the proceedings, which was ultimately resolved in the summer of 2015. This case is before this Court based upon the fact that the Louisiana funds appealed a determination that the case, the filing was premature and it should be referred to the Louisiana Accountancy Board, and they, in turn, filed a claim saying, well, it's not timely based upon the fact that it wasn't filed with the accounting board within a certain period of time. And so, if I may, I would like to address the cross-appeal because I think it's fairly easy to deal with. First of all, the district court specifically stated in the magistrate's ruling specifically stated that they're not ruling on the prescription issue. The second thing is that the fraudulent concealment issue as to when we should have reasonably discovered this is a question that has been decided on multiple occasions by the Fifth Amendment. It's not a question of fact to be determined by our trier of fact. Now, the interesting thing about this case is the Lamont Supreme Court decision that was decided in 2015 by the Louisiana Supreme Court. And they essentially said that when a professional is involved in a concealment of a negligent act in that case, and our case is not that, but they set up a negligent act, then it goes outside the accounting statute, which provides for a three-year preemptive provision or what we call in Louisiana a three-year drop dead. In other words, no matter the circumstance, if you don't file your case within three years of the act, then you're lost. But the Lamont case said, okay, if it involves fraudulent concealment by a professional, then the absolute three-year rule does not apply, and we then apply the general tort standards in Louisiana of contra non volunum, which is really Louisiana's version of what exemptions exist to the one-year prescription rule. And there are a number of them that are listed. Now, what's important about this, none of these issues have been argued. They weren't argued to the magistrate, and they weren't argued to the district, or they were argued to the district court, but not ruled upon because the district court adopted the decision of the magistrate. And the footnote in the magistrate's opinion specifically says we're not ruling on this issue. Now, what I expect counsel for Grant Thornton will say, well, court, you need to consider this because the facts are essentially uncontested, but there's no record of any depositions in this case, and the whole fact of the matter is, is that we've alleged in our complaint the facts that need to be considered here by the court today. And the first one is that Grant Thornton, at the time that we were considering making the purchase, they were also advising the issuer on a $27 million purchase. It was never disclosed to us that the auditors were wearing two hats, that they were the auditor and that they were also the investment advisor to the company to make an acquisition. And why is that important? A party, in this case, because what came out of the transaction which they served as investment advisor to was what we call the IAP note, which ended up being valued initially at face value at $27 million and then subsequently was reduced in value by a subsequent auditor down to $10 million. Now why is that important? Because it would have given us a right of redemption on our shares of stock. The part that I'm telling you is very complex, but it doesn't come through when you look at the cross appellate brief. And this is what we've alleged, which we want to have discovery on, is in their 2008 audit, which has been restated in submission that it wasn't right. The 2008 audit was restated, and that note is in that audit, but no valuations were ever done on it, and it's a clear conflict of interest given the fact that they were auditor and the investment advisor on the transaction that it arose from. Now, their case is essentially, look, in January of 2011, we issued restated financial statements. When we issued restated financial statements, total absolution. It's not so. They didn't deal with it at all when they issued the restated financial statements in 2011, but two important issues. Number one, evaluation of the IEP note, and the fact that $50 million of the proceeds had been misused. So even at that point in time that the restated financial statements were issued, it wasn't disclosed. Now, what does not come through in the brief is the reason why the financial statements were restated. It's not because they were good guys, it's because the SEC commenced an investigation during that time period. The other thing that doesn't come through in their brief is it was solely the United States personnel of Grant Thornton that were performing these audits and performing these services, and Matt Ludinger, who is the gentleman that signed the affidavit, says as much. So I think from the perspective of the fraudulent concealment, it is a question of fact. There's no question about it that it needs to be decided based upon a record and depositions. And further, there was no ruling on it at the district court level. And finally, this issue has been briefed in the discovery proceeding that was filed by our firm after we did file the complaint with the Louisiana Accountancy Board. Now, What is your position, I think this would be a yes or no question, as to whether this matter under State law needed to be submitted to the Accounting Board? Your Honor, the situation arises mostly in the best case that I can give you on the point is in the case of Cotter. And so, it was not filed before the Louisiana Accountancy Board. And on the principle of law, Cotter says that the Accountancy Board, whether the form that should be decided in, is a substantive law issue. And the issues of which we complained of, the audit itself, did not occur in Louisiana. So, your answer, I hear you giving a long-winded answer of no, it did not have to be submitted to the Accountancy Board. It was not because of the fact that the law of Louisiana did not apply to the audit per se. Now, here's clearly what the question is, and that's the issue that they faced in Cotter. They contested that issue, and for three years we argued back and forth as to whether they had contacts with Louisiana as to which law would be applicable. And if you look in their brief, and we cite it in ours, they pretty much admit, they say plaintiffs are required to seek panel review and acknowledge this precondition to the filing suit. GTUS chose to wait to invoke the panel review because it did not want to create grounds to the plaintiffs to argue to compromise its personal jurisdiction. That's exactly what happened. For four years, they never raised in any pleading the panel review. Not only did they not raise it, we had three pretrial conferences where jurisdiction was in, or not, or the conferences where one of the issues to be discussed was the jurisdiction of the court. It was never raised. When they removed the case from state court to federal court, they never raised the issue. So I think that we all acknowledge the fact that the reason why they never raised the issue was because they wanted to be able to maintain that they had no, Louisiana had no personal jurisdiction. Now, see, that issue changed when the Fifth Circuit ruled in 2015 that this case was related to the New York bankruptcy. And that's a whole other issue. But what happened was that we picked... On the question of the accountancy board, is it true that Louisiana statute says that the review panel can be waived only, quoting it, by written agreement of both parties? It does state that. But that implies, first of all, that the provision is applicable. In other words, the substantive law of Louisiana is applicable to it based upon COTR. And then the second issue is, is that you need a court of competent jurisdiction, as we cite under 37-108, and until you have a court of competent jurisdiction to look at the exact issues that we're looking at here, you can't make that decision. And that is what was being contested. And it's basically my position that what they did is that the issue of whether a court of competent jurisdiction can be waived or not, they didn't raise the issue because they wanted to keep the personal jurisdiction issue alive, nor do they ever concede the fact that they had anything to do with Louisiana based upon the affidavit of Mr. Luttinger. I mean, he comes into the federal court and files an affidavit and said he has nothing to do with Louisiana. So the bottom line on the thing is, is what harm have they suffered? We filed the lawsuit timely based upon the trustee's report, and the trustee prepared a major report, which is cited in the record, outlining what Grant Thornton did that was not correct. Within two months of receiving that report, we filed the lawsuit in Louisiana. And then, as a result of the filing and what was going on in what we call the CITCO case to determine whether it was going to be in federal court or state court, it sat up until the fall of 2015 because of a stay that was issued. Never in any pleading do they raise the accountancy board, and only when the magistrate asked them to brief it in 2017 did it occur. So if you look at the natural results, it's not fair. I mean, that's ultimately what it comes down to. They had knowledge of the claim and knew exactly what they were doing to create a waiver issue, and they did nothing. All right. Thank you, Mr. Price. You've saved time for rebuttal. Thank you. Mr. Palmore. Thank you, Your Honor. May it please the Court. I'm Joseph Palmore here on behalf of Grant Thornton. There's been a lot of arguments, a lot of dates swirling around in this case, but I'd like to start with describing what I think is a fairly straightforward path to a disposition here. And it's really only in two analytical steps. The first is, as the district court correctly held, plaintiffs were obligated to file first with the accountant review panel. And the second is that at the time the district court made that judgment, it was too late for plaintiffs to do that. And therefore, the disposition below should have been, instead of without prejudice, it should have been a judgment of dismissal with prejudice so that the parties and the review panel wouldn't embark on a futile act to consider a time bar proceeding. This disposition requires the court to consider only one date, really. It's the date that the plaintiffs say they were fully apprised of their claim. That's the date that the bankruptcy trustee issued its report. That was November 25, 2013. As I'll discuss in a moment, we think they actually were on inquiry notice well before that. But I concede them that point for purposes of this argument. If you assume that they knew in November 2013 that they had a claim and they had the road map for that claim, under Louisiana law, they had one year to bring that claim. Yet in 2017, they still hadn't done that. In 2017, when the district court dismissed this action, they were years too late from even the date triggered by what they claim they knew. And it's also clear, as we pointed out in our brief, that under Louisiana law, this is the Bernard case, there is no tolling if a plaintiff mistakenly goes into court first and doesn't comply with the mandatory requirement that it seek review before an accountant review panel. What Bernard says is there is no tolling. This is a period that cannot be interrupted or suspended. And then the subsequent action filed before the accountant review panel is untimely. We may have two preemptive periods here, a one year and a three year. Correct. Am I correct that under your date schedule and your position just announced that it would be preempted under both the one and the three year? Absolutely, Your Honor. It would be preempted, even ceding them for purposes of this argument that they didn't know until November 2013. In fact, you could cede them that they didn't know until they filed suit in 2014. And January 2014, and the result would be the same. They would be both barred by the one year discovery period and the three year absolute cutoff because at the time the district court ruled, it was 2017. It was four years later. So with respect to the first step of this, that it was that they had to file before the accountant review panel, Louisiana law couldn't be any clearer on this point. The statute even says this is not to be deemed optional. They had to file there. They've never really mustered a meaningful statutory argument as to why they didn't have to do it. Today, Mr. Price talked about the Cotter case, but that case involved a choice of law question and a claim brought in the district court's decision under Illinois law. And what the district court said was if you have a claim that's brought under the substantive law of another state, then you don't have to comply with this exhaustion requirement. But he also mentioned the Lamont case from Louisiana. Yes, Your Honor. The Lamont case is on the path that I'm talking about is completely beside the point because we concede them that they didn't know until the trustee report. We concede them, in fact, that they didn't know until they actually filed the complaint in this case. And the review panel proceeding is untimely. And they had to go there because they brought a Louisiana claim. If you look at the complaint, these are all Louisiana counts. This is not a complaint brought under the law of Illinois or New York or any other state. And if they bring a Louisiana claim, they are obligated to comply with Louisiana law. Personal jurisdiction is another question altogether. So again, there's no explanation really of why they didn't have to comply with the statutory argument. Instead, what plaintiffs have said in their briefs and here today is that there somehow was a waiver of this mandatory requirement. Judge Smith, as you pointed out, Louisiana law says that the exhaustion requirement can be waived only by written agreement of the parties. It's uncontested here that there was no written agreement. In their briefing, they've relied on a Louisiana Court of Appeals decision, which was a 2-1 decision, that said under extreme circumstances, there can be a waiver through litigation conduct. The Louisiana Supreme Court has never addressed that question and hasn't tried to square it with the plain text of the statute, which says the waiver can be done only by written agreement of the parties. But even putting that aside, the conduct there was completely different than what we have here. The party, the defendant there had filed two answers, there had been extended discovery. Here, as the magistrate judge recognized in rejecting this waiver argument, the case was still at the earliest stages, despite the fact that it had been pending for some time. The reason it had been pending for some time was because there was litigation initiated by plaintiffs who were trying to remand it back to State court. And then there was an appeal to this court in the related case, and everything kind of was on hold for a long time. But then this, it was the plaintiffs themselves, as part of the briefing on the threshold 12b-6 motion to dismiss, that injected this issue. In their opposition to the motion to dismiss, they said it has been suggested that this, that we had to go first to an accountant review panel. Seeing that, the magistrate judge asked for briefing on that question, and then that was briefed as part of the threshold 12b-6 disposition. There was no inconsistency with what Grant Thornton said there with respect to what it was litigating on the personal jurisdiction side of the case. I would invite you to look at the Ludinger Declaration that's at 765 that Mr. Price cited. Mr. Ludinger never said Grant Thornton has no contacts with Louisiana. He provided a series of uncontested and uncontestable facts that, that Grant Thornton had no partners in Louisiana, had no offices in Louisiana. It didn't have any, it didn't have any communication with these funds with respect to the substance of this lawsuit. He was making factual assertions that were consistent with the argument that there was no specific or general jurisdiction over Grant Thornton in this case, but that's separate and apart from what substantive law would apply. That's separate and apart from the fact that Grant Thornton is registered as an accountant in Louisiana. And that's separate in part from the fact that plaintiffs, when they brought this Louisiana claim, were charged with knowledge of what Louisiana law requires, which is to go to an accountant review panel first. Would you touch on the question of whether, if we agree, the dismissal should have been with or with prejudice? Absolutely, Judge Wiener. It should have been with prejudice. And we explained to the district, we made this very argument to the district court. We said that you were correct, the magistrate judge was correct in deciding that they failed to comply with Louisiana law and file with the accountant review panel, but we then pointed out that that dismissal should be with prejudice because it's now too late for them to do that. And we cited Bernard, the very same case that I mentioned to you earlier, saying that clearly establishes that there's no tolling if there's a wrongful filing or an erroneous filing in the district court first. And under this court's decision in Manneman versus Garrett, which we cite in our brief, all of that points to what the district court should have done in this case, which was a dismissal with prejudice, so that there wouldn't be an untimely, unnecessary detour to exhaust remedies that no longer exist. And in fact, the panel has, when they belatedly filed with the panel, the panel stayed the proceedings pending the district court's disposition of the timeliness issue in the related discovery proceeding. But the district court in that related discovery proceeding administratively closed the case in light of the fact that this So both the panel and the district court are looking to this court to decide that preemption issue, it's fully briefed, there's no reason not to decide it here. And in fact, the district court should have dismissed with prejudice on this basis in 2017. So that's again, that's a very straightforward path, which doesn't require consideration of fraud. It doesn't require consideration of who knew what when. It doesn't require consideration of Lamont. It simply requires you to look at the date of the trustee report, which is when they acknowledge they were on notice, or even the date that they filed their complaint in this case, when they were clearly on notice. And see that they didn't file with the account review panel within one year or three years of that date. That's a fairly simple path to a disposition. But I can turn to our second argument, which we think is also correct, which is that even if you put aside the fact that they didn't file before the account review panel, and you just kind of ignore that, and you say, well, they could have filed and gone to court first, that that filing in court in 2014 was untimely, was preempted. And that's because they were on notice in 2011 of a potential claim against auditors. There were a cascading series of events in 2011 between January and I gave them inquiry notice. In January, Leveraged issued revised financial statements, making very significant changes to the earlier financial statements. Grant Thornton issued new audit opinions with respect to those revised financial statements. In March, the funds tried to get their money out. In June, they were given an IOU, a promissory note, instead of the money that they requested. And they've gone on record saying in June is when they knew that their investment was not liquid. They knew that the numbers on their account statements were wrong. And all that together provided inquiry notice that they had a potential claim. Inquiry notice doesn't require that you know all the facts that you could draft your complaint that day. It simply means, do you have enough to pick up the phone and call a lawyer and ask if you have a claim? And here, they clearly had enough to pick up the phone to make that request in 2011 that they might have a claim against auditors. They say they didn't know that until 2013 because the bankruptcy trustee gave a more detailed factual road map. But that's not required. And it's also confounded by the real world example. We don't have to hypothesize about what they knew in 2011. Because earlier in 2013, before the trustee issued his report, they actually sued the leveraged funds. They sued Grant Thornton International, a different entity, making many of these same claims about the audit opinions. So not only were they on constructive notice, not only did they have enough to file a lawsuit before the bankruptcy trustee report, but they actually did so against Grant Thornton International and with respect to a number of the same claims that they assert here. Lamont is inapplicable for several reasons. Again, on our principal submission, the one I started off with, you don't even have to get to that. But with respect to the argument that I'm talking about now, that they were untimely when they filed suit in 2014, Lamont is inapplicable because they haven't pled fraud or fraudulent concealment with particularity as required by both Louisiana law and federal rule of procedure, civil procedure 9B. And Lamont makes clear that that's the kind of allegation you have to have with particularity in your complaint to invoke the fraud exception. Moreover, their argument comes down to one of an, it's an omission claim that Grant Thornton didn't speak up when it knew certain things. And Louisiana law is clear that there is no duty for an accountant to speak unless it has either contractual privity with the plaintiff or had direct communication or contact with the plaintiff. About the substance of the claim, and there's no allegation here that Grant Thornton, or Grant Thornton Kamen for that matter, which was the entity that actually issued these audit opinions, had any contact with these funds. And even putting all of that aside, what Lamont says is that if you do successfully navigate all of that and invoke the fraud exception, what Louisiana courts do is look back to what time period would have applied before 5604 was enacted. And what Lamont says is if you have basically a malpractice action against an attorney, that's a one year period, a one year delictual period that applies, that's Louisiana Code 3492. And here, and that's a one year from discovery. So that's a different path that takes you back to the very same point. Because they knew at the latest in 2011 that they had a claim, under the pre-5604 law, the one year delictual period, they had one year to sue, but they didn't sue until 2014. My friend on the other side says that there would be a 10 year period that would apply. That's a new argument that's not made in their briefs at all. And this is the first time we've heard that. But this, what Louisiana law says under Keenan, which is a case that they themselves cite, is that Louisiana courts look to the substance of claims, not to the labels. And if you read this complaint, it's clearly a malpractice, it's a negligence complaint. It's not a contract action. We didn't, Grant Thornton didn't have any contract with these plaintiffs. And there's no allegation of a breach of a contractual duty here, despite the fact that there's a third party beneficiary labeled claim, kind of mixed in with everything else. You look to the substance of the law and the substance of the claims, and the substance of the claims here are sound in negligence. And that would be a one year period under Lamont. But again, I could close with where I started, which is I don't think the court needs to get into Lamont. It doesn't need to get into fraudulent concealment. It doesn't need to resolve the dispute between the parties about when these plaintiffs were on constructive notice of their claims. If you see them that point, and you say, okay, they weren't on constructive notice until the bankruptcy trustee issued his report in 2013. They then had one year from that point to file, but they didn't file before the accountant review board until 2017. So they were years too late by any reasonable construction of the allegations here, by any reasonable construction of the mandatory terms of Louisiana law. So if there are no questions- Well, you've got some time. Sure. Would you narrow down for the court the difference in this statute between the one year and the three year preemptions? Sure, your honor. So the one year period runs from discovery, it kind of embodies a discovery rule. But then the three year part is a kind of a hard three year cut off that in non-Louisiana jurisdictions we would refer to as a statute of repose. So regardless of when they knew, they would have only three years to sue- Three years from what date? From the wrongful conduct, from the wrongful conduct that they allege. But both of them are preemption, correct? Absolutely, your honor. They're both preemption. The statute says on its face they can't be interrupted or suspended. They are mandatory. There is the fraud exception that we've talked about. But I don't think you even need to get there with respect to our core argument. So what we would ask the court to do is to hold, one, that the district court was correct in concluding that the plaintiffs failed to comply with the mandatory terms of Louisiana law under the claims that they themselves chose to bring, which was to go to an accountant review panel. But two, to modify the judgment below to make it a dismissal with prejudice. Because at the time the district court acted, and certainly now, it was too late for these plaintiffs to engage in that process. And I think that's a path that would save the parties, the accountant review panel, the district court with the attendant discovery action, would save all of those entities from wasting time embarking on a time barred proceeding where that's the same issue would come up again before this court several years down the road. Thank you, Your Honor. All right, thank you, Mr. Palmore. Mr. Price, you've saved time for rebuttal. Your Honor, as you asked the question whether it was dismissed with or without prejudice, and the record in the record cite 2328 and 225, and the magistrate specifically states, the undersigned does not reach defendant's argument concerning the timeliness of plaintiff's claim under RS 9 colon 5604. The factual issues, so much of what was argued just then is outside the record. I mean, it's just not there. Now, the district court adopted the ruling of the magistrate. And so the issue was never reached. Now, obviously, between the two of us, if we were to argue the case, the doctrine of contra non voluntum is applicable to this case based upon Vermont. And four exceptions exist under the doctrine of contra non voluntum, which need to be briefed and they need to be argued as to why the course of conduct of Grant Thornton is applicable. Now, we've sat here now for close to 40 minutes, and the conduct of Grant Thornton has not been examined. It has not been examined. If you heard the other side's case, it's everything that we should have done to discover their knowledge of the fraud. And that's not what the whole issue of fraudulent concealment and whether it extends the statute is about. Now, it's a stretch to make the argument that if we don't have personal jurisdiction over a Louisiana law, it would still apply to that audit. I've done this for 40 years. I've never heard that legal principle. It's just a stretch. And we've always said that you can't determine which law is applicable until you know which court is going to hear the matter. And their conduct was very consistent. And what is most unique about this case is they admit, they admit that they never raised the issue at the district court about the accountancy review panel. And at best, once you go into contra non volunum, it's a loving argument. And contra non volunum has specific exceptions to people that lull people into an act when they have knowledge of the fraud. And if you look at Lamont, and Lamont is the gospel on this, it specifically says we're outside the accounting statute and that you have the four exceptions. Now, they admit they lulled us. They admit that they didn't raise the issue because of the personal jurisdiction argument. When they had each one of the conferences that we had in the case, never raised it as an issue. Now, as between us and Grant Thornton, the question becomes on the restated audit that they had to issue because the SEC forced them to do it. You know, it almost sounds like when you hear their version of it, it wasn't a big deal. Wasn't a big deal. Well, what they didn't say in that restated audit, they didn't say, look, you know that note that we were investment advisor on? That $27 million note, it really has no value now because it has no interest payments on it and it should be written down. Didn't say that in that audit. What they didn't say in that audit when they restated it is that, look, by the way, we looked at it in 2008. And SITCO stole $50 million of your money and didn't put in investments. And we know that because we audited 2008. No mention of that. So you can't make this determination without knowing the gravity of the conduct of Grant Thornton. And so I would respectively submit that the court has to leave a high bar to basically say, we're going to make a factual determination that the claims were described when it wasn't done by the district court. I thank you for your time. Thank you, Mr. Price. Your case and all of today's cases are under submission. The court is in recess until 9 o'clock tomorrow.